IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | CASE NO. 15-50161 |
| GASFRAC ENERGY SERVICES, | § | Jointly Administered |
| INC., *et al.*, | § | |
| | § | Chapter 15 |
| Debtors in a foreign proceeding. | § | |

**JOINT MOTION OF THE MONITOR AND THE DEBTORS
FOR ORDER APPROVING SALE OF SUBSTANTIALLY ALL ASSETS FREE AND
CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS AND
RECOGNIZING AND GIVING FULL FORCE AND EFFECT TO THE ORDER OF THE
CANADIAN COURT APPROVING THE SALE OF SUBSTANTIALLY ALL ASSETS**

**NOTICE OF HEARING**

PLEASE TAKE NOTICE THAT A HEARING HAS BEEN SET ON THIS MOTION FOR APPROVAL OF CLAIMS PROCESS FOR WEDNESDAY, MARCH 18, 2015 AT 10:00 A.M. IN THE UNITED STATES COURTHOUSE, 615 E. HOUSTON STREET, COURTROOM 3, SAN ANTONIO, TEXAS 78205.

ANY PERSON DESIRING TO APPEAR TELEPHONICALLY AT THE HEARING SHOULD CONTACT COURTCALL AT (866) 582-6878 MONDAY THROUGH FRIDAY BETWEEN THE HOURS OF 5:00 A.M. AND 5:30 P.M. (PACIFIC TIME). IN ORDER TO ENSURE THE ABILITY TO PARTICIPATE TELEPHONICALLY, COURTCALL MUST RECEIVE ANY REQUEST NO LATER THAN THE BUSINESS DAY PRIOR TO THE HEARING.

PURSUANT TO ORDER GRANTING MONITOR'S AND DEBTORS' EXPEDITED MOTION TO SEAL: (1) CONFIDENTIAL DOCUMENTS AND INFORMATION REGARDING THE SALE OF THE DEBTORS' ASSETS AND (2) HEARING AND TRANSCRIPT ON PROCEEDINGS OF MOTION FOR APPROVAL OF SALE OF THE DEBTORS' ASSETS, ALL OR A PORTION OF THE HEARING MAY BE HELD UNDER SEAL, AND YOU MAY BE REQUIRED TO BE EXCUSED FROM THE SEALED PORTION OF THE HEARING.

Ernst & Young, LLP, ("EY") as the court-appointed monitor (the "Monitor") and authorized foreign representative for GASFRAC Energy Services, Inc. ("GESI"), GASFRAC

Services GP, Inc. ("GSGP"), GASFRAC US Holdings, Inc. ("Holdings"), GASFRAC ENERGY Services Limited Partnership ("GES LP"), GASFRAC Inc. ("GI"), and GASFRAC Energy Services (US) Inc. ("GESI US") (collectively, GESI, GSGP, GES LP, Holdings, GI and GESI US are referred to as the "Debtors") in the above captioned Chapter 15 cases, and the Debtors hereby file this Joint Motion of the Monitor and the Debtors for Order Approving the Sale of Substantially All Assets Free and Clear of Liens, Claims, Encumbrances and Interests and Recognizing and Giving Full Force and Effect to the Order of the Canadian Court Approving the Sale of Substantially All Assets (the "Motion"), by and through their respective counsel, seeking an order (i) approving the sale of substantially all of the assets of the Debtors free and clear of liens, claims, encumbrances and interests and (ii) recognizing and giving full force and effect to an order of the Canadian Court (as hereafter defined) approving the sale of substantially all assets and granting related relief (the "Canadian Sale Order"). In support of the Motion, the Monitor and the Debtors will rely on (i) the McLeod-Hill Affidavit (as hereafter defined) filed under seal in support hereof, (ii) the Monitor's Confidential Supplement (as hereafter defined) filed under seal in support hereof, (iii) testimony of witnesses presented at the Sale Hearing (as hereafter defined) and (iv) by other evidence presented at the Sale Hearing and respectfully state as follows:

## JURISDICTION, VENUE AND CORE ALLEGATIONS

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a) and (b), 28 U.S.C. §§ 157(a) and (b)(1) and 11 U.S.C. § 1501. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(N) and (P). Venue is proper in this district pursuant to 28 U.S.C. §§1408, 1409 and 1410.

35141643.1

2

## INTRODUCTION

2. The Debtors are a group of Canadian-based companies who have filed for restructuring under the Companies' Creditors Arrangement Act in Canada. The Canadian Court has appointed EY as the Monitor for the Debtors. The Monitor and the Debtors are attempting to sell the Debtors' assets. Sales procedures have already been approved by the Canadian Court and this Court (collectively, the "Sale Procedures"). Pursuant to the Sale Procedures, the Debtors and their professionals, with active participation of the Monitor, conducted a rigorous sale process resulting in the proposed sale to Purchaser (as hereafter defined). The Debtors have reached an agreement with a prospective purchaser (the "Purchaser") for the sale of substantially all of their assets (the "Transaction") and have filed an Application for a Sale Approval and Vesting Order (the "Canadian Sale Motion") with the Canadian Court seeking its approval of the sale of assets. The Canadian Sale Motion is currently set to be heard on March 16, 2015. By the time the hearing on this Motion is held, the Debtors and the Monitor expect the Transaction will have been approved by the Canadian Court.

## EXPEDITED RELIEF AND NOTICE OF HEARING

3. Due to the diminishing value of the Debtors' assets, and timing constraints imposed by the Debtors' lender and contained in the asset purchase agreement, the Transaction must close on or before April 2, 2015. The Court has set March 18, 2015 at 10:00 A.M. (CT) for the hearing on this Motion (the "Sale Hearing").

## CONFIDENTIAL NATURE OF THE TRANSACTION

4. It is important that the details of the Transaction are to remain confidential until closing. In the unlikely event that the Monitor and the Debtors are required to pursue an alternative transaction because the Transaction does not complete, it is important that the market not be impacted or otherwise affected by the details of the Transaction. Likewise, for strategic

business reasons and to avoid financial prejudice, the Purchaser has required that its identity be kept confidential until the Transaction is approved by the Canadian Court and this Court.

5. As a result of the necessity of keeping the details of the Transaction confidential, the Debtors have filed the Confidential Affidavit of Lori McLeod-Hill (the "McLeod-Hill Affidavit") with the purchase and sale agreement attached thereto under seal with the Canadian Court and has requested a Sealing Order in respect to same. Likewise, the Monitor has filed its Confidential Supplement to the Third Report (the "Monitor's Confidential Supplement") in which he advises the Canadian Court of the sale results and recommends approval of the Transaction under seal and has requested a Sealing Order in regard to same. By order dated March 6, 2015, this Court has approved the filing of, among other things, the McLeod-Hill Affidavit, the APA (as hereafter defined) and the Monitor's Confidential Supplement under seal in these Chapter 15 cases.

## SUPPORT FOR THIS MOTION

6. The Monitor and the Debtors attach the following Exhibits to this Motion.

| Exhibit | Description | Comment |
|---|---|---|
| A | Proposed Form of Order Authorizing Sale of Substantially All Assets Fee and Clear of Liens, Claims, Encumbrances and Interests and Recognizing and Giving Full Force and Effect to Order of the Canadian Court Approving Sale of Substantially All Assets | Proposed Order approving sale by this Court. |
| B | Application For a Sale Approval and Vesting Order | Canadian Court application to approve sale |
| C | Proposed Canadian Order Approving Sale of Assets | Proposed Sale Order to be entered by Canadian Court |

7. The Monitor and the Debtors also request that the Court take judicial notice of its files in this case. *Wilson v. Huffman (Matter of Missionary Baptist)*, 712 F.2d 206, 211 (5th Cir.

35141643.1

4

1983)(court may take judicial notice of its own files and records and draw reasonable inferences from those documents); FED. R. EVID. 201.

## BACKGROUND

### A. Business Operations of the Debtors

8. Headquartered in Calgary, Alberta with operations throughout Western Canada and the United States, the Debtors have pioneered the utilization of the liquid petroleum gas fracturing process (the "LPG Fracturing Process"). GESI is the parent company that owns, operates and funds the subsidiaries. GESI is a corporation formed under the Alberta Business Corporation Act (the "ABCA") with its principal place of business located in Calgary, Alberta, Canada. Its shares are publicly traded on the Toronto Stock Exchange under the symbol GFS. GSGP is a corporation formed under the ABCA and is a wholly owned subsidiary of GESI. GES LP is a registered partnership formed under the ABCA with GSGP owning .00135% and serving as GES LP's general partner. GESI owns 99.99865% of GS LP's equity. Holdings is a Delaware corporation that is wholly owned by GESI. GI is a Delaware corporation wholly owned by Holdings. GESI US is a Delaware corporation wholly owned by Holdings.

9. Fracturing in the oil and gas industry has typically consisted of hydraulic fracturing, whereby water is used as the fluid injected with proppant to fracture the rock formation holding petroleum or natural gas. The LPG Fracturing Process, which replaces water with liquid petroleum gas, is a relatively new technology in the industry, having been developed and first used by the Debtors only six years ago. The LPG Fracturing Process is advantageous in that it saves on costs and burdens associated with using water for fracturing. Since inception, the Debtors have completed over 2,400 fracks at over 700 locations in numerous formations in Canada and the United States, including the Eagleford, San Miguel, Cardium, Viking, Utica and Frederick Brook shale formations.

10. The Debtors' assets, located in Canada (primarily, Edson, Alberta, Calgary, Alberta and Red Deer, Alberta) and the United States (primarily, Floresville, Texas), consist of various equipment, intellectual property, inventory (including, but not limited to, chemicals and proppant), material contracts, accounts receivable, books and records, leased property in Alberta, Texas and Oklahoma, as well as owned real property located in Edson, Alberta and Floresville, Texas.

11. The Monitor and the Debtors refer the Court to the Background section of the Monitor's Expedited Petition For Recognition As Foreign Main Proceeding Pursuant To Sections 1515 And 1517 Of The United States Bankruptcy Code And Related Relief ("Petition for Recognition") filed at 15-50161 Dkt. #7 for more details on the background of the Debtors.

## B. The Insolvency Proceedings

12. The Companies' Creditors Arrangement Act ("CCAA") is a Canadian federal Act that affords financially troubled corporations the opportunity to receive protection from their creditors and to restructure their financial affairs through a formal process commonly known as a "Plan of Arrangement." It is also common in CCAA proceedings for the Canadian Courts to allow a liquidating CCAA process should a Plan of Arrangement prove not to be viable in such proceedings. Corporations seeking relief under the CCAA are given the opportunity to avoid liquidation, typically allowing such corporations' creditors to receive some form of distribution for outstanding amounts owing to them while preserving the going-concern value of the corporation. The process under the CCAA is commenced by applying to the Canadian court for protection under the CCAA. The Canadian court will then issue an initial order, giving the debtor thirty (30) days of protection from its creditors to allow for the preparation of the Plan of Arrangement.

13. The Debtors initiated a proceeding under the CCAA on January 14, 2015 (the "Canadian Proceedings"). The Canadian Proceedings are being heard in the Court of Queen's Bench of Alberta, Judicial Center of Calgary (the "Canadian Court"). On January 15, 2015, the Canadian Court granted an Initial Order (the "Initial Order") for relief in the Canadian Proceedings, a copy of which is attached as Exhibit GF-4 to the Monitor's Notice of Filing of Documents in Support of First Day Motions. 15-50161, Dkt. # 10. Through a series of orders of the Canadian Court, the Debtors' period of protection from their creditors has been extended in the Canadian Proceedings, currently rescheduled to expire on March 18, 2015 (which expiry is expected to be extended prior to the Sale Hearing).

14. Also, on January 15, 2015, under the Initial Order EY was appointed as the Monitor of the Canadian Proceedings and was tasked with the role of supervising the property and business affairs of the Debtors.

15. On January 15, 2015, the Monitor filed six Chapter 15 petitions on behalf of the entities collectively referred to as the Debtors (the "Petitions").

16. In conjunction with the Petitions, on January 15, 2015, the Monitor, as the foreign representative in each case, also filed its Expedited Motion for Recognition as Foreign Main Proceeding Pursuant to Sections 1515 and 1517 of the United States Bankruptcy Code and Related Relief (the "Recognition Motions"). 15-50161 Dkt. # 7

17. On January 16, 2015, this Court entered an order directing joint administration of the Debtors' Chapter 15 Cases. 15-50161 Dkt. # 14

18. On February 2, 2015, this Court, among other things, recognized the Canadian Proceedings as foreign main proceedings and gave full force and effect to the Initial Order. 15-50161 Dkt. # 46

35141643.1

7

19. As more fully described in Section C, below, the Canadian Court and this Court, respectively, approved the Sales Procedures on January 23, 2015 and February 2, 2015, respectively.

C. **THE SALE PROCEDURES AND SALE PROCESS**

20. Prepetition, the Debtors retained CIBC World Markets ("CIBC") as its financial advisor to explore and evaluate the strategic alternatives available to the Debtors. On January 15, 2015, the Debtors entered into a renewed engagement agreement with CIBC to continue acting as its financial advisor. On January 16, 2015, the Canadian Court approved the renewed engagement agreement with CIBC. CIBC has advised and assisted the Debtors in the sale of their assets.

21. On January 20, 2015, the Monitor and the Debtors filed the Application by GASFRAC Group of Companies with the Canadian Court, seeking, among other things, Canadian Court approval of the Sale Procedures. The Canadian Court approved the Sale Procedures on January 23, 2015.

22. On January 27, 2015, the Monitor filed its Expedited Motion for Approval of Procedures for the Sale and Investment Solicitation Process whereby the Monitor requested this Court to approve the sale procedures previously approved by the Canadian Court. 15-5016 Dkt. # 23. This Court approved the Sale Procedures by order entered on the docket on February 2, 2015. 15-50161 Dkt. # 43.

23. Pursuant to the Sale Procedures, bids were solicited by CIBC. The solicitation process received the benefit of CIBC's experience marketing the Debtors' business, assets and undertaking prior to the filing of the insolvency proceedings. A total of 120 parties were contacted, including both strategic buyers and financial sponsors. Confidentiality agreements were signed by 34 potential bidders. A total of 6 bids were submitted for all or a portion of the

35141643.1

assets by the bidding deadline of February 24, 2015. The Monitor has supervised and been an active participant in the sale process (the "Sale Process") implemented through the Sale Procedures.

24. After reviewing the bids, and in consultation with CIBC and the Monitor, the party designated as having submitted the highest and best bid was the Purchaser. After designation of the Purchaser's bid as the highest and best bid, the Monitor and the Debtors engaged in extensive negotiations with the Purchaser with respect to a purchase and sale agreement. Such negotiations were at arm's length and good faith. As a result of such negotiations, Purchaser and the Debtors have entered into an Asset Purchase and Sale Agreement dated February 27, 2015 (the "APA"), a copy of which has been filed under seal as an attachment to the McLeod-Hill Affidavit. The assets to be purchased pursuant to the APA are hereafter referred to as the "Purchased Assets," which constitute substantially all the Debtors' assets, and are proposed to be sold free and clear of any and all liens, claims, encumbrances and interests (other than as expressly set forth in the APA). A summary of the material terms of the APA and background information on the Purchaser are contained in the McLeod-Hill Affidavit.

25. On March 9, 2015, the Debtors filed an Application seeking, among other things, approval of the Canadian Court for the sale of the Assets to Purchaser and a vesting of the Assets in the Purchaser's name. A copy of the Canadian Sale Motion is attached hereto as Exhibit B. Concurrently with such filing, the Debtors filed the McLeod-Hill Affidavit, providing the Canadian Court on a confidential basis with a copy of the APA, and the Monitor filed its Third Report and the Monitor's Confidential Supplement advising the Canadian Court of the sale results and recommending approval of the sale to Purchaser. The hearing on the sale ("the Canadian Sale Hearing") is set before the Canadian Court on March 16, 2015. A copy of the

proposed Canadian Sale Order is attached hereto as Exhibit C. It is anticipated that the Canadian Court will approve the sale at the Canadian Sale Hearing. Upon entry of the Canadian Sale Order, the Monitor and the Debtors will supplement this Motion.

26. Approval of the proposed sale to Purchaser is in the best interest of the bankruptcy estates. The proposed sale to Purchaser represents the highest and best offer received after a rigorous marketing and sale effort by CIBC and the Debtors with supervision and active participation of the Sale Process by the Monitor. The proposed sale is not conditional upon further due diligence or financing contingencies. Purchaser has demonstrated that it has the capacity to close the transaction upon obtaining the necessary approvals of the Canadian Court and this Court. Further, based upon current estimates and the Debtors' books and records, the purchase price to be paid will be sufficient to pay unsecured creditors in the United States and Canada in full and yield a significant recovery for holders of subordinated debt in Canada.

## **REQUESTED RELIEF**

27. By this Motion and pursuant to 11 U.S.C. § 363(b), (f) and (m) and FED. R. BANKR. P. 6004 and 6005, the Monitor and the Debtors request that the Court enter an Order approving the sale of substantially all the Debtors' assets described in the APA to Purchaser, free and clear of all liens, claims, encumbrances and interests (other than as expressly set forth in the APA). The sale will include the assignment of any Permits (as defined in the APA) and Assumed Contracts (as defined in the APA) to the Purchaser free and clear pursuant to section 363. The Monitor and the Debtors also request that the Court recognize and give full force and effect to the Canadian Sale Order approving the sale of the Purchased Assets to Purchaser.

## DISCUSSION AND RELEVANT LEGAL AUTHORITY

### A. Relief Pursuant to § 363

28. It is anticipated that, either explicitly or by reference to 11 U.S.C. § 1520, the Court will apply the 11 U.S.C. § 363 standards to the relief requested. Assuming those requirements are applicable, they are satisfied and will apply to these jointly administered Chapter 15 cases.

29. Section 363(b)(1) of Title 11 of the United States Code (the "Bankruptcy Code") provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." *See* 11 U.S.C. § 363(b)(1); *see also Cajun Elec. Power Coop., Inc. v. Official Comm. of Unsecured Creditors (In re Cajun Elec. Power Coop., Inc.)*, 119 F.3d 349, 354 (5th Cir. 1997). The proper standard for the Court's use in considering a proposed motion to sell is the "business judgment" test and, under that standard, the Monitor and the Debtors have the burden to establish sound business reasons for the terms of the proposed sale. *See In re Castre, Inc.*, 312 B.R. 426, 428 (Bankr. D. Colo. 2004) (*citing In re Lionel*, 722 F.2d 1063 (2nd Cir. 1983)). The factors for the Court to consider in whether to approve the sale include: (i) any improper or bad motive; (ii) that the price is fair and the negotiations or bidding occurred at arm's length; and (iii) adequate procedures, including proper exposure to the market and accurate and reasonable notice to all parties in interest. *Id.*

30. 11 U.S.C. § 363(f) provides that a debtor may sell property under 11 U.S.C. § 363(b) free and clear of any interest in such property of an entity other than the estate only if:

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

35141643.1

11

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

31. The Monitor and the Debtors submit that subsections (1), (3), and/or (5) of the above statute apply as will be proven at the Sale Hearing. That is the case because, *inter alia*, all liens, claims, encumbrances and interests (except those expressly set forth in the APA as assertable against the Purchaser or the Purchased Assets after closing) against the Debtors or the Purchased Assets will attach to the proceeds of the sale received by the Monitor, and those proceeds will be sufficient to pay in full all received claims. In addition, the Monitor and the Debtors also anticipate that all creditors claiming liens or security interests will consent to the sale, thereby satisfying subsection (2) of the statute. Accordingly, the Purchased Assets can be sold free and clear of liens, interests, encumbrances and claims pursuant to 11 U.S.C. § 363(f).

32. The sale will include assignment of any Permits and Assumed Contracts (the "Assigned Agreements") to the Purchaser free and clear. The Assigned Agreements include the Amended and Restated Intellectual Property License Agreement effective July 25, 2008, as amended by the First Amendment to Amended and Restated Intellectual Property License Agreement effective July 14, 2010, both by and between Chevron U.S.A. Inc. and GASFRAC Energy Services Inc. (together, the "Chevron Agreement"). The Debtors, the Monitor and the Purchaser do not believe (or have no reason to believe based upon information at hand) that the Permits or the Chevron Agreement constitute executory contracts or unexpired leases such that section 365 of the Bankruptcy Code cannot be applicable by its terms. As of the Closing, all of

35141643.1

the Debtors' rights, title and interest in and to the Assigned Agreements shall be and have been assigned to Purchaser free and clear pursuant to section 363 of the Bankruptcy Code.[1]

33. Approval of the sale to Purchaser has been requested by the Canadian Court and will promote the objectives and principles provided in Chapter 15 of the Bankruptcy Code, including Section 1501. The relief requested in this Motion is specifically of a type contemplated by Section 1521 and Chapter 15. The sale should, therefore, be approved and the proposed order attached as Exhibit A entered by the Court.

34. The Monitor and the Debtors believe Purchaser is purchasing the Purchased Assets in good faith, and that Purchaser constitutes a good faith buyer within the meaning of Bankruptcy Code section 363(m). The Court's order approving the sale should, therefore, hold that Purchaser is entitled to the full protections of section 363(m) and has proceeded in good faith in all respects in connection with this proceeding.

35. Moreover, the Purchase Price was not controlled by any agreement among potential bidders at such sale and neither the Monitor or the Debtors, nor the Purchaser engaged in collusion or any other conduct that would cause or permit the APA or Transaction to be avoidable under section 363(n) of the Bankruptcy Code. The Court's order approving the sale should, therefore, hold that neither the APA nor the Transaction may be avoided and no party shall be entitled to damages or other recovery pursuant to Section 363(n) of the Bankruptcy Code.

36. The Monitor and the Debtors assert that any laws regarding bulk sales, or similar laws, are not applicable to the sale of Purchased Assets. In addition, the Monitor and the Debtors

---

[1] In the event of any dispute as to the executory or unexpired nature of a contract or lease, the Monitor, the Debtors and the Purchaser reserve any and all of their rights, including to argue in the alternative that the provisions of section 365 are met with respect thereto and no cure amount is owed, which they will do at the Sale Hearing (or otherwise as needed).

35141643.1

believe that because the assignment, transfer and/or sale of the Purchased Assets: (i) is in exchange for the Purchase Price, no withholding of U.S. federal income tax pursuant to sections 1441 or 1442 of the Internal Revenue Code is required, and (ii) constitutes an occasional sale, it is exempt from Texas sales and use tax pursuant to Texas Comptroller's Sales Tax Rule 34 Tex. Admin. Code § 3.316 and Texas Tax Code § 151.304.

37. The Court's order approving the sale should, therefore, include holdings confirming these points.

**B.     Extension of Comity**

38. The Monitor and the Debtors respectfully request that this Court recognize the full force and effect, and extend comity, as necessary, to the Canadian Sale Order. To the extent reference to comity is necessary, Section 1609 states:

> If the court grants recognition under section 1517, and subject to any limitations that the court may impose consistent with the policy of this chapter . . . (3) a court in the United States **shall grant comity or cooperation to the foreign representative**.

11 U.S.C. § 1509(b)(3)(emphasis added).

39. A central tenet of Chapter 15 is the importance of comity in cross-border insolvency proceedings. *Ad Hoc Group of Vitro Noteholders v. Vitro SAB De CV (In re Vitro SAB De CV)*, 701 F.3d 1031, 1053 (5th Cir. 2012).

> The Supreme Court defined comity as follows:
>
> "Comity," in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws.
>
> *Hilton v. Guyot*, 159 U.S. 113, 143 (1895); *see also Vitro*, 701 F.3d at 1043-44.

40. The exceptions to comity are construed especially narrowly when the foreign jurisdiction is like Canada, a sister common law jurisdiction with procedures akin to those in the United States. *Clarkson Co. v. Shaheen*, 544 F.2d 624, 630 (2d Cir. 1976)(Clear and convincing evidence of fraud is required to successfully attack a foreign judgment; the court held that it would contravene the public policy of New York and the doctrine of comity not to recognize the Canadian judgment in these circumstances); *see also In re Petition of Davis*, 191 B.R. 577, 587 (Bankr. S.D.N.Y. 1996)(stating that "Courts in the United States uniformly grant comity to Canadian proceedings" and noting that Canada is a sister common law jurisdiction with the United States).

41. The extension of comity to Canadian orders has continued since the 2005 enactment of Chapter 15. *See In re Metcalfe & Mansfield Alternative Invs.*, 421 B.R. 685, 698-99 (Bankr. S.D.N.Y. 2010)(extending comity to Canadian CCAA order providing for a third party release and citing numerous cases where American courts have extended comity to Canadian judgments); *Raymond Chabot, Inc. v. Serge Côté Family Trust*, 2014 U.S. Dist. LEXIS 117128, 6 (D.S.C. Aug. 22, 2014)(entering temporary restraining order assisting Canadian bankruptcy receiver and noting "the widely-accepted view that Canadian judgments are entitled to recognition and enforcement here"); *Collins v. Oilsands Quest, Inc.*, 484 B.R. 593, 597 (S.D.N.Y. 2012)(bankruptcy court enforced Canadian court stay in a CCAA noting "the question here is not whether this Court should grant a stay in the first instance, but whether should accord comity and deference to the stay orders entered by the Alberta Court. The Court concludes that in light of the comity principles laid out above, the Court must defer to the procedures set forth in the Canadian Proceedings and enforce the stay.").

42. Based on the foregoing, the Monitor and the Debtors request that this Court extend comity by recognizing and giving full force and effect to the Canadian Sale Order. The Court should, therefore, approve and enter the proposed order attached as Exhibit A.

## DISPOSITION OF SALE PROCEEDS

43. All liens, claims, encumbrances and interests (except those expressly set forth in the APA as assertable against the Purchaser or the Purchased Assets) against the Debtors or the Purchased Assets will attach to the proceeds of the sale received by the Monitor. The proceeds of the sale will be held by the Monitor pursuant to the terms and conditions of the Canadian Sale Order. The net proceeds shall stand in the place and stead of the Purchased Assets, and that from and after delivery of the Monitor's Certificate under the Canadian Sale Order, all claims, liens, encumbrances and interests shall attach to the net proceeds with the same priority as they had with respect to the Purchased Assets immediately prior to the sale, as if the Purchased Assets had not been sold and remained in the possession or control of the person having that possession or control immediately prior to the sale.

## JUDGMENT

44. The Monitor and the Debtors also request that the Court confirm when entering an order approving this Motion that such order constitutes a final and appealable order and judgment. The proposed order attached as Exhibit A contains such provisions.

## RELIEF FROM ANY STAY

45. Pursuant to Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 6004(h), 7062 and 9014, unless the Court orders otherwise, the proposed sale order may be automatically stayed. As described above, time is clearly of the essence in connection with the sale process and consummation of the sale, which must be completed by April 2, 2015, to remain within the forbearance period negotiated with the Debtors' lender. In addition, the Debtors'

35141643.1

assets are deteriorating. Therefore, to maximize the value received for the assets and minimize accruing liabilities, the Monitor and the Debtors seek to consummate the sale of the assets to the Purchaser expediently. Accordingly, the Monitor and the Debtors request that the Court waive any applicable stay period, whether under Bankruptcy Rules 6004(h), 7062 or 9014, or otherwise.

WHEREFORE, the Monitor and the Debtors respectfully request that the Court enter an Order approving the sale of substantially all of the Debtors' assets free and clear of liens, claims, encumbrances and interests; specifying that, to the extent applicable, liens, claims, encumbrances or interests attach to the proceeds of the sale received by the Monitor; recognizing and giving full force and effect to the order approving the sale entered by the Canadian Court; and such other and further relief as the Court deems appropriate.

Dated: March 11, 2015.	Respectfully submitted,

**NORTON ROSE FULBRIGHT US LLP**

By: */s/Steve A. Peirce*
Steve A. Peirce
State Bar No. 15731200
steve.peirce@nortonrosefulbright.com

300 Convent Street, Suite 2100
San Antonio, TX 78205-3792
Telephone: (210) 224-5575
Facsimile: (210) 270-7205

Louis R. Strubeck
State Bar No. 19425600
louis.strubeck@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 2800
Dallas, TX 75201
Telephone: (214) 855-8000
Facsimile: (214) 855-8200

**COUNSEL FOR CANADIAN MONITOR**

**VINSON & ELKINS LLP**

By: */s/John E. West*
Harry A. Perrin
State Bar No. 15796800
hperrin@velaw.com

John E. West
State Bar No. 21202500
jwest@velaw.com

1001 Fannin Street, Suite 2500
Houston, TX 77002-6760
Telephone: (713) 758-2548
Facsimile: (713) 615-5016

**COUNSEL FOR THE DEBTORS**

35141643.1

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Motion has been served upon the persons entitled to notice by either U.S. first class mail, postage prepaid or by electronic notification on March 11, 2015. On March 11, 2015, approximately 2900 parties-in-interest were directed to be served with the foregoing Motion through the offices of noticing agent Upshot Services, LLC. The Monitor will supplement this certificate of service with a copy of such service list

/s/Steve A. Peirce