

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: March 18, 2015.**

_Craig A. Gargotta_

**CRAIG A. GARGOTTA**
**UNITED STATES BANKRUPTCY JUDGE**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **CASE NO. 15-50161** |
| **GASFRAC ENERGY SERVICES,** | § | **Jointly Administered** |
| **INC.,** *et al.,* | § | |
| | § | **Chapter 15** |
| Debtors in a foreign proceeding. | § | |

---

### ORDER AUTHORIZING SALE OF SUBSTANTIALLY ALL ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS AND RECOGNIZING AND GIVING FULL FORCE AND EFFECT TO ORDER OF THE CANADIAN COURT APPROVING SALE OF SUBSTANTIALLY ALL ASSETS

---

Come on for hearing the Joint Motion of the Monitor and the Debtors for Order Approving Sale of Substantially all Assets Free and Clear of Liens, Claims, Encumbrances and Interests and Recognizing and Giving Full Force and Effect to the Order of the Canadian Court Approving the Sale of Substantially all Assets (the "Motion")[1] filed by the Court-appointed Monitor and foreign representative (the "Foreign Representative") and the Debtors in these Chapter 15 cases. The Court finds that notice was proper given the circumstances and that no

---

[1] Capitalized terms used herein but not otherwise defined shall have the meaning ascribed to such terms in the APA (defined below), and if not defined therein, the Motion. If any term not capitalized but utilized herein is not ascribed a meaning herein, it shall have the meaning ascribed in the Bankruptcy Code (defined below), if applicable.

US 3353650v.5

party in interest made any response in opposition to the Motion or, if so, the relief requested in any such response was denied for the reasons stated on the record.  Based upon all evidence submitted and argument at the Sale Hearing, including all affidavits filed and the proffer or testimony of witnesses, as well as the record of and docket filings in these cases, of which the Court takes judicial notice, the Court further finds that the relief requested is in the best interest of the Debtors, their estates, their creditors, and other parties in interest and should be granted:

THE COURT HEREBY FINDS THAT:

### Jurisdiction, Final Order, and Statutory Bases

A.    This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. §§ 157(a), 157(b)(1), 1334(a) and 11 U.S.C. § 1501.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(N), and (P).  Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408, 1409 and 1410.

B.    This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding anything to the contrary, including Bankruptcy Rule 6004(h), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs that this Order constitute an entry of judgment.

C.    The statutory predicates for the relief requested in the Motion and granted herein are, inter alia, Bankruptcy Code Sections 105(a), 363(b), (f), and (m) and Bankruptcy Rules 2002(a)(2), 6004(a), (b), (c), (e), (f), and (h), 9007, and 9014.

### Notice

D.    Notice of the Motion, the relief granted herein, and an opportunity to be heard in connection with any of the foregoing was provided to all creditors as well as parties in interest

2

and was good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, the relief granted herein or the Sale Hearing is required.

E.     The Debtors and the Foreign Representative conducted a sale process in accordance with, and have otherwise complied in all respects with, the Sale Procedures. The sale process set forth in the Sale Procedures afforded a full and fair-opportunity for any entity to make their highest and best offer to purchase the Purchased Assets. The sale process was duly noticed and conducted in a non-collusive, fair, and good faith manner, and a reasonable opportunity has been given to any interested party to make their highest and best offer for the Purchased Assets.

## Validity of Transfer

F.     The Debtors have full corporate power and authority to execute and deliver the Asset Purchase Agreement dated February 27, 2015 (including all schedules, exhibits, agreements and auxiliary documents related thereto, the "APA") executed by the Debtors, GASFRAC Luxembourg S.A.R.L. and the purchaser (the "Purchaser") and all other documents contemplated thereby, and no further consents or approvals are required for the Debtors or the Foreign Representative to consummate the transactions contemplated by the APA, except as otherwise set forth in the APA.

G.     The sale, transfer and assignment of each of the Purchased Assets (which, in all instances in this Order, shall include all Assumed Contracts and the Permits) to the Purchaser will be, as of the closing date of the Transaction (the "Closing Date"), a legal, valid, and effective sale, transfer and assignment of such assets, and each such sale, transfer and assignment vests or will vest the Purchaser with all right, title, and interest of the Debtors and the Foreign Representative to the Purchased Assets free and clear of all liens, claims, encumbrances and interests (including, but not limited to, (i) Claims, and (ii) Encumbrances, other than Permitted

3

Encumbrances set forth in Section 1.1(yy)(i)-(iv) of the APA (the "encumbrances")) of any kind or nature whatsoever against the Foreign Representative, the Debtors, their estates, or any of the Purchased Assets accruing, arising, or relating to facts or circumstances any time prior to the Closing (collectively, "Free and Clear").

### Good Faith of Purchaser

H.     Purchaser is not an "insider" of any of the Debtors, as defined in Bankruptcy Code section 101(31).

I.     The Debtors and the Foreign Representative have demonstrated compelling circumstances and a good, and sufficient business purpose and justification for the sale.

J.     Purchaser is purchasing the Purchased Assets in good faith and is a good faith buyer within the meaning of Bankruptcy Code section 363(m). Purchaser is, therefore, entitled to the full protections of section 363(m) and has proceeded in good faith in all respects in connection with this proceeding.

K.     The Purchase Price was not controlled by any agreement among potential bidders at such sale and neither the Debtors or the Foreign Representative, nor the Purchaser engaged in collusion or any other conduct that would cause or permit the APA or Transaction to be avoidable under section 363(n) of the Bankruptcy Code.

L.     The APA was negotiated at arm's length and in good faith and represents a fair and reasonable offer to purchase the Purchased Assets under the circumstances of these Chapter 15 cases. The Purchase Price being paid by the Purchaser represents the highest and best offer for the Purchased Assets resulting from the Sale Process.

M.     Approval of the Motion and the APA, and the consummation of the Transaction are in the best interests of the Debtors, their creditors, their estates and all other parties-in-interest.

4

## Satisfaction of Section 363(f)

N.     The Purchaser would not have entered into the APA and would not consummate the Transaction if the sale of the Purchased Assets to the Purchaser were not Free and Clear including, but not limited to, (i) any employment or labor agreements; (ii) any pension, welfare, compensation, or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plan of the Debtors and any withdrawal liability in connection therewith; (iii) any other employee, worker's compensation, occupational disease, or unemployment or temporary disability related claim, including without limitation claims that might otherwise arise under or pursuant to (a) the Employee Retirement, Income, Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Worker Adjustment and Retraining Act of 1988, (g) the Age Discrimination and Employee Act of 1967, and (h) the Consolidated Omnibus Budget Reconciliation Act of 1986; (iv) environmental claims or liens arising from conditions first existing on or prior to the Closing (including, without limitation, the presence of hazardous toxic, polluting, or contaminating substances or waste) that may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601, *et seq.* or similar state statute; (v) any bulk sales or similar law; (vi) any tax statutes or ordinances, including, without limitation, the internal Revenue Code of 1986, as amended; and (vii) any statutory, mineral or carrier liens, including but not limited to those referenced in Chapter 5 (Exempt Property and Liens), Subtitle B (Liens) of the Texas Property Code.  The Free and Clear nature of the sale, therefore, is so fundamentally integrated with the sale that the consummation of the sale cannot be effected other than on a free and clear basis.

5

O.     The Debtors and the Foreign Representative may sell the Purchased Assets Free and Clear (except for post-Closing obligations under Assumed Contracts assigned to Purchaser) because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of liens, claims, encumbrances and interests against the Debtors, their estates, or any of the Purchased Assets who did not object, or who withdrew their objections, to the APA or the Motion are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of such liens, claims, encumbrances and interests who did object fall within one or more of the other subsections of section 363(f) and are adequately protected by having their liens, claims, encumbrances and interests, if any, in each instance against the Debtors, their estates, or any of the Purchased Assets, attach to the proceeds of the Transaction received by the Foreign Representative ultimately attributable to the Purchased Assets in which such creditor alleges an interest, in the same order of priority, with the same validity, force and effect that such creditor had prior to the Transaction, and subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

P.     The transfer of the Purchased Assets to Purchaser Free and Clear will not result in any undue burden or prejudice to any holders of any liens, claims, encumbrances and interests. Except as expressly permitted or otherwise specifically provided by the APA or this Order, all such liens, claims, encumbrances and interests of any kind or nature whatsoever shall attach to the proceeds of the Transaction received by the Foreign Representative in the order of their priority, with the same validity, force and effect which they now have as against the Purchased Assets and subject to any claims and defenses the Debtors or other parties may possess with respect thereto. All persons or entities having liens, claims, encumbrances or interests of any

6

kind or nature whatsoever against or in any of the Debtors or the Purchased Assets shall be forever barred, estopped and permanently enjoined from pursuing or asserting such liens, claims, encumbrances and interests, if any, whether by payment, setoff or otherwise, against Purchaser, any Purchased Assets, or any successors or assigns.

## Compelling Circumstances for Immediate Sale

Q.     To maximize the value of the Purchased Assets to the Debtors, their estates, creditors and parties in interest, it is essential that the Closing of the sale occur within the time constraints set forth in the APA. Time is of the essence in consummating the Transaction as set forth in the APA.

R.     Given all of the circumstances of these Chapter 15 cases and the adequacy and fair value of the Purchase Price under the APA, the Transaction constitutes a reasonable exercise of the Debtors' and Foreign Representative's business judgment and should be approved.

S.     The consummation of the Transaction is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, Bankruptcy Code sections 105(a), 363(b), 363(f), 363(m), and all of the applicable requirements of such sections have been complied with in respect of the transactions.

AND THE COURT HEREBY ORDERS THAT:

## General Provisions

1.     The relief requested in the Motion is GRANTED. The transactions contemplated by the Motion and the APA are approved as set forth in this Order.

2.     All objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled as announced to this Court at the Sale Hearing or by stipulation filed with this Court or as otherwise provided in this Order, and all reservations of rights included therein, are hereby overruled on the merits.

7

3.      The Canadian Sale Order entered in the Canadian Proceeding, a copy of which is attached to this Order as Exhibit A, is hereby recognized and given full force and effect in the United States.  Notwithstanding any provision of this Order, payments to PNC Bank and PNC Bank Canada Branch shall be made solely pursuant to the Canadian Sale Order including, without limitation, Paragraph 20 therein.

## Approval of Asset Purchase and Sale Agreement

4.      Given all of the circumstances of these Chapter 15 cases and the adequacy and fair value of the Purchase Price under the APA, the Transaction constitutes a reasonable exercise of the Debtors' and Foreign Representative's business judgment and is approved.

5.      The APA and all other ancillary documents, and all of the terms and conditions thereof, are hereby approved.

6.      Pursuant to section 363(b) and (f) of the Bankruptcy Code, the Debtors and Foreign Representative are authorized and empowered to take any and all actions necessary or appropriate to (a) consummate the Transaction pursuant to and in accordance with the terms and conditions of the APA, (b) close the Transaction as contemplated in the APA and this Order, and (c) execute and deliver, perform under, consummate, implement, and close the Transaction, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the APA and the transactions contemplated thereby, including any other ancillary documents, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the APA and such other ancillary documents.

7.      This Order shall be binding in all respects upon the Foreign Representative, the Debtors and their estates and creditors, all holders of equity interests in any of the Debtors, all holders of any claim(s), whether known or unknown, against any Debtor, any holders of liens, claims, encumbrances and interests against or on all or any portion of the Purchased Assets, any

8

parties in interest, all contract counter-parties, the Purchaser and all successors and assigns of the Purchaser, and any trustees, examiners, responsible officers, estate representatives, or similar entities for any of the Debtors, if any, subsequently appointed in any of the Debtors' Chapter 15 cases or upon a conversion to Chapter 7 under the Bankruptcy Code of any of the Debtors' cases. This Order and the APA shall inure to the benefit of the Foreign Representative, the Debtors, the Purchaser and their respective successors and assigns.

### Transfer of Purchased Assets

8.      Pursuant to Bankruptcy Code sections 105(a), 363(b), and 363(f), the Debtors and the Foreign Representative are authorized to transfer the Purchased Assets on the Closing Date and Purchaser is directed to pay the Purchase Price to the Debtors as provided in the APA. Except as otherwise provided in the APA, the Purchased Assets shall be transferred to Purchaser "as is, where is" with all faults in accordance with the APA upon and as of the Closing Date. Such transfer shall constitute a legal, valid, binding, and effective transfer of such Purchased Assets and, upon the Debtors' receipt of the Purchase Price, shall be Free and Clear. Upon the Closing, Purchaser shall take title to and possession of the Purchased Assets.

9.      All persons or entities other than the Debtors, if any, that are in possession of some or all of the Purchased Assets and any certificates of title, instruments or other indicia of title representing or evidencing ownership of the Purchased Assets which have been pledged as security in respect of the Purchased Assets (the "Indicia of Ownership") are directed to surrender possession of such Purchased Assets and Indicia of Ownership. The Foreign Representative and the Debtors shall exercise commercially reasonable efforts to assist the Purchaser in assuring that all persons or entities in possession of some or all of the Purchased Assets will surrender possession of the Purchased Assets and Indicia of Ownership to (i) the Debtors before the Closing Date or (ii) the Purchaser on or after the Closing Date. All persons or entities are hereby

9

forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Foreign Representative and the Debtors to sell and transfer the Purchased Assets to Purchaser in accordance with the terms of the APA and this Order.

10.     Pursuant to section 363(f) of the Bankruptcy Code, the transfer of title to the Purchased Assets shall be Free and Clear.

11.     The Chevron Agreement and Permits do not constitute executory contracts or unexpired leases, as those terms are utilized in Section 365 of the Bankruptcy Code and, therefore, section 365 of the Bankruptcy Code is inapplicable thereto.  As of the Closing, all of the Debtors' right, title and interest in and to the Assigned Agreements shall be and have been assigned to Purchaser Free and Clear pursuant to section 363 of the Bankruptcy Code and all obligations arising thereunder from and first arising after Closing shall be the sole obligation of Purchaser.

12.     Purchaser is not a successor (*de facto*, by alter ego, by veil piercing or otherwise) and shall not be liable as a successor under any theory of successor liability for liens, claims, encumbrances or interests that encumber or relate to the Purchased Assets. All liens, claims, encumbrances and interests shall attach solely to the proceeds of the sale received by the Foreign Representative with the same validity, priority, force, and effect that they now have as against the Purchased Assets, and subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

13.     On the Closing Date, each party in interest is authorized and directed to execute such documents and take all other actions as may be necessary to release liens, claims, encumbrances and interests on the Purchased Assets, if any, as provided for herein, as such liens, claims, encumbrances and interests may have been recorded or may otherwise exist.

US 3353650v.5

14.     This Order shall be effective as a determination that, as of the Closing Date, all liens, claims, encumbrances and interests of any kind or nature whatsoever existing as to the Purchased Assets prior to the Closing of the sale have been unconditionally released, discharged and terminated and that the Free and Clear conveyances described herein have been effected, with such liens, claims, encumbrances and interests to attach to the proceeds received by the Foreign Representative in the same priority that existed prior to the Petition Date.

15.     If any person or entity which has filed statements or other documents or agreements evidencing liens, claims, encumbrances and interests on or in, all or any portion of the Purchased Assets (a "Claim Holder") shall not have delivered to the Debtors or Purchaser prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary or desirable to Purchaser for the purpose of documenting the release of all liens, claims, encumbrances and interests that such Claim Holder has or may assert with respect to all or any portion of the Purchased Assets, then the Debtors or Purchaser are authorized to execute and file such statements, instruments, releases, and other documents on behalf of such Claim Holder with respect to the Purchased Assets and each and every filing office, agency, clerk(s) and/or recorder(s) is authorized and directed to accept same. Purchaser is authorized to file, register, or otherwise record a certified copy of this Order with the appropriate filing office, agency, clerk(s) and/or recorder(s), which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the sale of the Purchased Assets Free and Clear, including the release of all liens, claims, encumbrances and interests in the Purchased Assets as of the Closing Date of any kind or nature whatsoever.

16.     Except as expressly permitted or otherwise specifically provided by the APA or this Order, all persons or entities holding liens, claims, encumbrances or interests in all or any portion of the Purchased Assets arising under or out of, in connection with, or in any way relating to the Debtors, the Purchased Assets, the operation of the Debtors' business prior to the Closing Date, or the transfer of the Purchased Assets to Purchaser, are hereby forever prohibited and permanently enjoined from asserting such liens, claims, encumbrances and interests, whether by payment, setoff or otherwise, against Purchaser, its successors or assigns, their property or the Purchased Assets.

17.     This Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease, and each of the foregoing entities is hereby directed to and shall accept for filing any and all of the documents and instruments necessary and appropriate to consummate, effectuate or reflect the transactions contemplated by this Order or the APA.

18.     The Purchaser shall be authorized, as of the Closing, to operate under any Governmental Authority, license, permit, registration, authorization or approval of or given to the Debtors with respect to the Purchased Assets, and all such licenses, permits, registrations and authorizations and approvals shall be and shall be deemed to have been transferred to the Purchaser as of the Closing.

12

**Other Provisions**

19.     Except as otherwise expressly set forth in this Order or the APA, Purchaser shall not have any liability or other obligation of the Debtors or the Foreign Representative arising under or related to any of the Purchased Assets.

20.     Purchaser shall not be liable for any liens, claims, encumbrances and interests of any kind or nature whatsoever in or against the Debtors, the Foreign Representative or any of their predecessors or affiliates, and Purchaser shall have no successor or vicarious liabilities of any kind or character including, but not limited to, liabilities on account of any tax arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of any of the Purchased Assets prior to the Closing of the sale (except as agreed to in the APA or auxiliary documents executed in connection therewith), and Purchaser shall be exonerated of any successor liability to any state or federal taxing authority with regard to any tax, including sales tax.

21.     Without limiting the generality of the foregoing, and except as otherwise specifically provided herein or in the APA, Purchaser shall not be liable for any claims against the Debtors, the Foreign Representative or any of their predecessors or affiliates, and Purchaser shall have no liabilities of any kind or character, including, but not limited to under any theory or application, of antitrust, environmental, successor, vicarious or transferee liability, labor law, de facto merger, substantial continuity, the WARN Act and employee benefit and/or welfare plan(s), and as to (i) any employment or labor agreements; (ii) any pension, welfare, compensation, or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plan of the Debtors, and any withdrawal liability in connection therewith; (iii) any other employee, workers' compensation, occupational disease, or unemployment or temporary disability related claim, including without limitation claims that

13

might otherwise arise under or pursuant to (a) the Employee Retirement, Income, Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Worker Adjustment and Retraining Act of 1988, (g) the Age Discrimination and Employee Act of 1967, and (h) the Consolidated Omnibus Budget Reconciliation Act of 1986; (iv) environmental claims or liens arising from conditions first existing on or prior to the Closing of the sale (including, without limitation, the presence of hazardous toxic, polluting, or contaminating substances or waste) that may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation and Liability Act, 42 § 9601, et seq. or similar state statute; (v) any bulk sales or similar law; (vi) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; and (vii) any statutory, mineral or carrier liens, including but not limited to those referenced in Chapter 5 (Exempt Property and Liens), Subtitle B (Liens) of the Texas Property Code, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, or liquidated or unliquidated with respect to the Foreign Representative, the Debtors, the Purchased Assets or any obligations of the Debtors arising prior to the Closing Date.

22.     Under no circumstances shall Purchaser be deemed a successor of or to the Debtors for any liens, claims, encumbrances and interests of any kind or nature whatsoever against or in the Debtors or the Purchased Assets. The sale, transfer, assignment and delivery of the Purchased Assets shall not be subject to any liens, claims, encumbrances and interests of any kind or nature whatsoever, which shall remain with, and continue to be obligations of, the Debtors. Following the Closing, no Claim Holder shall interfere with Purchaser's title to or use

14

and enjoyment of the Purchased Assets based on or related to such lien, claim, encumbrance or interest, or any actions that the Foreign Representative or the Debtors may take in these Chapter 15 cases.

23.    The Transaction is undertaken by Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the sale shall not affect the validity of the Transaction, unless such authorization and consummation of the Transaction are duly stayed pending such appeal. Purchaser is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

24.    Neither the APA nor the Transaction may be avoided and no party shall be entitled to damages or other recovery pursuant to Section 363(n) of the Bankruptcy Code.

25.    Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (a) these Chapter 15 cases, (b) any subsequent Chapter 7 case into which any such Chapter 15 cases may be converted, or (c) any related proceeding subsequent to entry of this Order, shall affect, conflict with or derogate from the provisions of the APA or the terms of this Order.

26.    No order concerning the distribution of the sale proceeds, no distribution of the sale proceeds, and no allocation in connection with either of the foregoing, whether based upon a valuation of the Purchased Assets or otherwise, shall affect or have an effect on: (i) the Purchaser's tax basis, allocation, or other tax position regarding the Purchased Assets, (ii) the manner in which the Purchased Assets are valued by the Purchaser for tax, accounting, or any

US 3353650v.5

other purposes, or (iii) how the Purchaser accounts for the Purchased Assets in financial statements, or otherwise.

27.     Pursuant to Bankruptcy Rules 7062, 9014, 6004(h) and 6006(d), this Order shall be effective immediately upon entry and the Foreign Representative, the Debtors and Purchaser are authorized, but are not required, to close the sale immediately upon entry of this Order, and any stay periods in Bankruptcy Rules 7062 or 6004(h), or otherwise, are expressly waived.

28.     Any laws regarding bulk sales, or similar laws, are not applicable to the sale of Purchased Assets.  As the assignment, transfer and/or sale of the Purchased Assets: (i) is in exchange for the Purchase Price, no withholding of U.S. federal income tax pursuant to sections 1441 or 1442 of the Internal Revenue Code is required, and (ii) constitutes an occasional sale, it is exempt from Texas sales and use tax pursuant to Texas Comptroller's Sales Tax Rule 34 Tex. Admin. Code § 3.316 and Texas Tax Code § 151.304.

29.     To the extent that this Order is inconsistent with any prior order or pleading in these Chapter 15 cases, the terms of this Order shall govern. To the extent that this Order is inconsistent with the Canadian Sale Order, the terms of the Canadian Sale Order shall govern.

30.     To the extent there are any inconsistencies between the terms of this Order and the APA (including all ancillary documents executed in connection therewith), the terms of this Order shall govern.

31.     The Foreign Representative and the Debtors are authorized to take all actions necessary to effect the relief granted pursuant to this Order.

32.     In accordance with the Court's Order (Docket No. 75), the identity of the Purchaser, the APA, and the terms of the Transaction shall remain confidential until Closing.

33.     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the findings of fact set forth herein constitute conclusions of law, they are adopted as such. To the extent any of the conclusions of law set forth herein constitute findings of fact, they are adopted as such.

34.     This Court shall retain jurisdiction to interpret, implement, and enforce the terms and provisions of this Order, and to adjudicate, if necessary, any and all disputes concerning or relating to this Order.

35.     IT IS FURTHER ORDERED that from the proceeds of the sale of the Purchased Assets received by the Foreign Representative, prior to the distribution of any proceeds to any other creditor except for PNC Bank and PNC Bank Canada, the amount of $1,591,439.02 (USD) shall be set aside by the Debtors (Monitor) in a segregated account as adequate protection for the year 2015 and prior secured ad valorem tax claims of Wilson County, Harris County, Montgomery County, Cypress-Fairbanks Independent School District and all taxing units for which said entities collect ad valorem taxes (the "Texas Ad Valorem Tax Authorities"). The liens of the Texas Ad Valorem Tax Authorities shall attach to these proceeds to the same extent and with the same priority as the liens they now hold against the property of the Debtors, if any. These funds shall be on the order of adequate protection and shall constitute neither the allowance of the claims of the Texas Ad Valorem Tax Authorities, nor a cap on the amounts they may be entitled to receive. Furthermore, the claims and liens of the Texas Ad Valorem Tax Authorities shall remain subject to any objections any party would otherwise be entitled to raise as to the priority, validity or extent of such liens. These funds may be distributed upon agreement

17

between the Texas Ad Valorem Tax Authorities, the Debtors (Monitor) and the Purchaser, or by subsequent order of the United States Bankruptcy Court, duly noticed to all of them.

US 3353650v.5

| | |
|---|---|
| COURT FILE NUMBER | **1501-00396** |
| COURT | **COURT OF QUEEN'S BENCH OF ALBERTA** |
| JUDICIAL CENTRE | Calgary |
| APPLICANTS | **IN THE MATTER OF THE** *COMPANIES' CREDITORS ARRANGEMENT ACT*, **R.S.C. 1985, c. C-36, as amended** |
| | **AND IN THE MATTER OF THE** *BUSINESS CORPORATIONS ACT*, **R.S.A. 2000, c. B-9** |
| | **AND IN THE MATTER OF GASFRAC ENERGY SERVICES INC., GASFRAC SERVICES GP INC., GASFRAC ENERGY SERVICES (US) INC., GASFRAC US HOLDINGS INC. and GASFRAC INC.** |
| DOCUMENT | **APPROVAL & VESTING ORDER** |
| ADDRESS FOR SERVICE AND CONTACT INFORMATION OF PARTY FILING THIS DOCUMENT | Josef G.A. Krüger, Q.C./Robyn Gurofsky<br>Borden Ladner Gervais LLP<br>1900, 520 3rd Ave. S.W.<br>Calgary, AB  T2P 0R3<br>Telephone:  (403) 232-9774<br>Facsimile:  (403) 266-1395<br>Email:  JKruger@blg.com /RGurofsky@blg.com<br>File No. 441817-000015 |

*I hereby certify this to be a true copy of the original ___order___*

*Dated this ___16___ day of ___March___ 2015*

*_____*
*for Clerk of the Court*

**DATE ON WHICH ORDER WAS PRONOUNCED:** March 16, 2015

**NAME OF JUSTICE WHO MADE THE ORDER:** The Honourable Justice K.M. Eidsvik

**LOCATION OF HEARING:** Calgary, Alberta

UPON the application of **GASFRAC ENERGY SERVICES INC. ("GESI"), GASFRAC SERVICES GP INC. ("GSGP")** for itself and in its capacity as general partner of **GASFRAC ENERGY SERVICES LIMITED PARTNERSHIP ("GES LP"), GASFRAC ENERGY SERVICES (US) INC. ("GESI US"), GASFRAC US HOLDINGS INC. ("Holdings")** and **GASFRAC INC. ("GI")** (individually a **"Vendor Entity"** and collectively the **"Vendor"**) in these proceedings; **AND UPON** having read the Application, the Affidavit of Lori McLeod-Hill sworn on

**EXHIBIT**

**A**

March 9, 2015, the Confidential Affidavit of Lori McLeod-Hill dated March 10, 2015 (the **"Confidential Affidavit"**), the Third Report of the Monitor, dated March 11, 2015, the Confidential Supplement to the Monitor's Third Report dated March 11, 2015 (the **"Confidential Report"**), the Affidavit of Stella Kim, dated March 12, 2015 (the **"Service Affidavit"**), the pleadings and proceedings filed herein, including the Initial Order granted on January 15, 2015 (the **"Initial Order"**), and the Order granted on January 23, 2015 approving the sales and solicitation process; **AND UPON** hearing counsel for the Vendor, the Purchaser, the Monitor and any other interested party appearing at the Application;

**IT IS HEREBY ORDERED AND DECLARED THAT:**

1.      The time for service of notice of this application is abridged to the time actually given and service of the Application and supporting material as described in the Service Affidavit is good and sufficient, and this hearing is properly returnable before this Honourable Court today and further service thereof is hereby dispensed with.

2.      Unless otherwise defined in this Order, all capitalized terms used in this Order shall have the meaning ascribed to them in the Asset Purchase Agreement between the Vendor and [Purchaser] (the **"Purchaser"**) dated February 27, 2015 (the **"Agreement"**), attached to the Confidential Affidavit as Exhibit "C".

**Approval of the Agreement and the Transaction**

3.      The Agreement, including the transaction for the purchase, sale, assignment, transfer and conveyance of the Purchased Assets from the Vendor to the Purchaser and related assignments, transfers, conveyances, assumptions, and other arrangements contemplated by or set forth in the Agreement (the **"Transaction"**), is found to be in the best interests of the Vendor, its creditors, and its other stakeholders, and therefore the Agreement and the Transaction contemplated thereby is hereby authorized, ratified, deemed commercially reasonable and approved.

4.      The sale, assignment, transfer and conveyance of the Purchased Assets by the Vendor to the Purchaser on the terms and conditions contained in the Agreement is hereby approved and

the Vendor and the Monitor are hereby authorized and directed to complete the Closing of the Transaction pursuant to the terms of the Agreement.

5.    The Vendor and the Monitor are authorized and directed to take all such steps, perform, consummate, implement and executed and deliver all such conveyance documents, bills of sale, assignments, conveyances, transfers, deeds, representations, indicia of title, tax elections, documents and instruments of whatsoever nature or kind as may reasonably be necessary or desirable to consummate the Transaction in accordance with the terms of the Agreement including, without limitation, proceeding with the Inspection, settlement with the Purchaser in respect of all adjustments contemplated by the Interim Statement of Adjustments and the Final Statement of Adjustments, and distributions from the Holdback, and making such amendments as the Vendor, the Monitor and the Purchaser may approve in writing and which do not materially alter the Agreement, and upon such trust conditions as may be agreed upon among legal counsel for the Vendor, the Monitor and the Purchaser.

6.    In the event the Vendor fails to take any step or execute any document reasonably necessary or desirable to consummate the Transaction, the Monitor is hereby authorized and directed to take such step or execute any such document on the Vendor's behalf.

**Monitor's Certificate**

7.    Upon Closing, the Monitor is hereby authorized and directed to promptly file with the Court in these proceedings and serve upon the Vendor, the Purchaser and those Persons listed on the Service List (attached as **Schedule "A"** to this Order) a certificate (substantially in the form set out as **Schedule "B"** to this Order) certifying that the Transaction has closed substantially in accordance with the terms of the Agreement, subject to the Final Statement of Adjustments and distributions from the Holdback (the "**Monitor's Certificate**").

**Vesting of the Assets**

8.    Upon Closing and filing of the Monitor's Certificate, all of the Vendor's right, title, estate and interest in and to the Purchased Assets shall vest absolutely in the name of the Purchaser (or its nominee), free and clear of and from any and all security interests (whether contractual, statutory, or otherwise), hypothecs, caveats, mortgages, trusts or deemed trusts

(whether contractual, statutory, or otherwise) liens, encumbrances, executions, levies, charges, or other financial or monetary claims, whether or not they have attached or been perfected, registered or filed and whether secured, unsecured or otherwise, and whether by payment, set off or otherwise (collectively, the "**Claims**"), including, without limiting the generality of the foregoing:

a)       any encumbrances or charges created by the Initial Order or subsequent Orders granted in the within CCAA proceedings;

b)       all charges, security interests or claims against the personalty comprising the Purchased Assets, whether evidenced by registrations pursuant to the *Personal Property Security Act* (Alberta), any other personal property registry system or otherwise; and

c)       the Encumbrances listed on **Schedule "C"** hereto, which shall not include the permitted encumbrances, caveats, easements and restrictive covenants listed on **Schedule "D"**.

For greater certainty, this Court orders that all of the Encumbrances affecting or relating to the Purchased Assets and all charges, security interests or Claims evidenced by registrations pursuant to the *Personal Property Security Act* (Alberta), any other personal property registry system or otherwise where any Claim of any kind may be registered or recorded are hereby expunged, ordered removed and otherwise unconditionally discharged and terminated as against the Purchased Assets. The Vendor or the Monitor is hereby authorized and directed to take all necessary steps and execute any and all documents to effect any and all discharges, and the registrars and all other persons in control or otherwise supervising such offices of registration or recording shall forthwith remove and discharge all such registrations.

9.       The Purchaser is authorized and directed to file, register or otherwise record a certified copy of this Order and the Monitor's Certificate with the appropriate filing office, agency, clerk(s) and/or recorder(s), which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the sale of the Purchased Assets free and clear from any and all Claims, including the release of all liens, claims, encumbrances and interests in the Purchased Assets as of the Closing Date of any kind or nature whatsoever.

10. Upon delivery of the Monitor's Certificate and a certified copy of this Order, together with any applicable registration fees, the Registrar of Land Titles of Alberta (the "Registrar") is hereby authorized, requested, and directed, notwithstanding the requirements of section 191(1) of the *Land Titles Act*, RSA 2000, c L-7 and notwithstanding that the appeal period in respect of this Order may not have elapsed, to cancel the existing Certificate of Titles for those lands and premises municipally and legally described in the attached **Schedule "E"** (the "**Lands**"), and to issue a new Certificate of Title for the Lands in the name of the Purchaser (or its nominee), and to register such transfers, discharges, discharge statements of conveyances, as may be required to convey clear title to the Lands to the Purchaser (or its nominee), which Certificate of Title shall be clear of all Encumbrances and subject only to the Permitted Encumbrances.

11. The Purchaser (and its nominee) shall, by virtue of the completion of the Transaction, have no liability of any kind whatsoever in respect of any Claims against the Vendor.

12. Under no circumstances shall the Purchaser be deemed a successor of or to the Vendor for any Claims of any kind or nature whatsoever against or in the Vendor or the Purchased Assets. Following the Closing, no person with a Claim shall interfere with the Purchaser's title to or use and enjoyment of the Purchased Assets based on or related to such Claim or any actions that the Vendor may take in the within CCAA proceedings.

13. The Vendor and all persons who claim by, through or under the Vendor in respect of the Purchased Assets, and all persons or entities having any Claims of any kind whatsoever in respect of the Purchased Assets, save and except for the persons entitled to the benefit of the Permitted Encumbrances, shall stand absolutely and forever barred, estopped and foreclosed from and permanently enjoined from, pursuing, asserting or claiming any and all right, title, estate, interest, royalty, rental, equity of redemption, or Claim in respect of or to the Purchased Assets and, to the extent that any such persons or entities remain in the possession or control of any of the Purchased Assets, or any artifacts, certificates, instruments or other indicia of title representing or evidencing any right, title, estate, or interest in and to the Purchased Assets, they shall forthwith deliver possession thereof to the Purchaser (or its nominee).

14. The Purchaser (or its nominee) shall be entitled to enter into and upon, hold and enjoy the Purchased Assets for its own use and benefit absolutely without any interference of or by the Vendor, or any person claiming by or through or against the Vendor.

15. The Purchaser shall be authorized, as of the Closing, to operate under any Governmental Authority, license, permit, registration and authorization or approval of or given to the Vendor with respect to the Purchased Assets, and all such licences, permits, registrations and authorizations and approvals shall be and shall be deemed to have been transferred to the Purchaser as of the Closing.

16. Pursuant to clause 7(3)(c) of the Canada *Personal Information Protection and Electronic Documents Act* and section 20(e) of the Alberta *Personal Information Protection Act*, the Vendor and the Monitor are authorized and permitted to disclose and transfer to the Purchaser all human resources and payroll information in the Vendor's records pertaining to the Vendor's past and current employees, including personal information of those employees listed in the Agreement. The Purchaser (or its nominee) shall maintain and protect the privacy of such information and shall be entitled to use the personal information provided to it in a manner which is in all material respects identical to the prior use of such information by the Vendor.

**Handling of the Net Proceeds**

17. The Monitor shall hold the proceeds received from the Purchaser pursuant to the Agreement, less completion costs (including, but without limitation good and services taxes, transfer taxes, legal and other costs, expenses and disbursements, of the Vendor and the Monitor) and other usual completion costs incurred (the "**Net Proceeds**") pursuant to and in accordance with the terms of this Order.

18. The Net Proceeds shall stand in the place and stead of the Purchased Assets, and from and after the delivery of the Monitor's Certificate all Claims shall attach to the Net Proceeds with the same priority as they had with respect to the Purchased Assets immediately prior to the sale, as if the Purchased Assets had not been sold and remained in the possession or control of the person having that possession or control immediately prior to the sale.

19.  Unless otherwise authorized by this Order, the Monitor shall make no distributions from the Net Proceeds except by further Order of this Court.

20.  Unless otherwise ordered, at Closing, the Monitor is hereby authorized and directed to pay to PNC Bank Canada Branch ("**PNC**") all of its claims against the Vendor, provided that the Monitor shall withhold $1.440 million (USD) thereof, comprised of the amount of the early termination fee claimed by PNC plus security for costs, pending determination of whether or not the early termination fee properly forms part of the obligations of the Vendor payable to PNC. The determination shall be made by the Court on application by the Monitor for advice and direction to be heard on or before April 25, 2015, or such other date as counsel may agree or the Court may direct.

21.  At Closing, the Holdback shall be retained by the Purchaser and delivered to the Purchaser's legal counsel. The Holdback shall be held in trust by the Purchaser's legal counsel in an interest-bearing account and it shall be releasable in accordance with the terms of the Agreement or by further Order of this Court.

**Transaction not a Preference or Transfer at Undervalue**

22.  Notwithstanding:

a)  the pendency of this proceeding and the declaration of insolvency made herein;

b)  the pendency of any petition for receiving orders or bankruptcy orders heretofore or hereafter issued pursuant to the *Bankruptcy and Insolvency Act*, RSC 1985, c B-3 (the "**BIA**"), as amended, in respect of any or all Vendor Entities, any receiving orders issued pursuant to any such petitions or any assignments in bankruptcy which may hereafter be made by or with respect to any or all Vendor Entities;

c)  any assignment in bankruptcy made by any or all Vendor Entities; and

d)  the provisions of any federal or provincial statute:

the assignment, transfer, conveyance and vesting of the Vendor's right, title, estate and interest in and to the Purchased Assets in the Purchaser (or its nominee) pursuant to this Order shall be binding on any trustee in bankruptcy that may be appointed in respect of the

Vendor and shall not be void or voidable by creditors of the Vendor, nor shall it constitute nor be deemed to be a settlement, fraudulent preference, assignment, fraudulent conveyance, transfer at undervalue, or other reviewable transaction under the *Bankruptcy and Insolvency Act* (Canada) or any other applicable federal or provincial legislation, nor shall it constitute oppressive or unfairly prejudicial conduct pursuant to any applicable federal or provincial legislation.

**Sealing Order**

23.     The Confidential Affidavit and the Confidential Report shall immediately be sealed by the Clerk of the Court, kept confidential and not form part of the public record, and not be available for public inspection unless and until otherwise ordered by this Court, upon seven days' notice to all interested parties. The Confidential Affidavit and the Confidential Report shall be sealed and filed in an envelope containing the following endorsement thereon:

> THIS ENVELOPE CONTAINS THE CONFIDENTIAL AFFIDAVIT OF LORI MCLEOD-HILL DATED MARCH 10, 2015 AND THE CONFIDENTIAL SUPPLEMENT TO THE MONITOR'S THIRD REPORT DATED MARCH 11, 2015, WHICH SHALL BE SEALED FOR A PERIOD OF THREE (3) MONTHS PURSUANT TO AN ORDER ISSUED BY THE HONOURABLE MADAM JUSTICE EIDSVIK DATED MARCH 16, 2015, AND IS NOT TO BE PLACED ON THE PUBLIC RECORD OR MADE PUBLICALLY ACCESSIBLE.

**Application for Further Advice**

24.     The Monitor, the Purchaser (or its nominee), the Vendor or any other interested party, shall be at liberty to apply for further advice, assistance and directions as may be necessary in order to give full force and effect to the terms of this Order and to assist and aid the parties in closing the Transaction.

**Miscellaneous Matters**

25.     This Court hereby requests the aid and recognition of any court or any judicial, regulatory or administrative body in any province or territory of Canada and any judicial, regulatory or administrative tribunal or other court constituted pursuant to the Parliament of Canada or the legislature of any province or any court or any judicial, regulatory or administrative body of

any other nation or state, to act in aid of and to be complementary to this Court in carrying out the terms of this Order.

26.  Service of this Order shall be deemed good and sufficient by serving the same on:

    a)  the persons listed on the Service List (as found at Schedule "A" to this Order);

    b)  the Purchaser or on the Purchaser's solicitors; and

    c)  by posting a copy of this Order on the Monitor's website at:

http://www.ey.com/ca/gasfracenergy.

27.  No other Persons are entitled to be served with a copy of this Order.

28.  Service of this Order shall be deemed good and sufficient regardless of whether service is effected by PDF copy attached to an email, facsimile, courier, personal delivery or ordinary mail.

"K.M. Eidsvik"
_____
Justice of the Court of Queen's Bench of Alberta

# SCHEDULE "A"

| | |
|---|---|
| COURT FILE NUMBER | 1501-00396 |
| COURT | COURT OF QUEEN'S BENCH OF ALBERTA |
| JUDICIAL CENTRE | Calgary |
| APPLICANTS | IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, as amended |
| | AND IN THE MATTER OF THE *BUSINESS CORPORATIONS ACT*, R.S.A. 2000, c. B-9 |
| | AND IN THE MATTER OF GASFRAC ENERGY SERVICES INC., GASFRAC SERVICES GP INC., GASFRAC ENERGY SERVICES (US) INC., GASFRAC US HOLDINGS INC. and GASFRAC INC. |

| GASFRAC SERVICE LIST | | | |
|---|---|---|---|
| **FIRM** | **EMAIL** | **PHONE** | |
| Bennett Jones LLP 4500, 855-2 Street SW Calgary, AB T2P 4K7 **Chris Simard Kenneth Lenz** | simardc@bennettjones.com LenzK@bennettjones.com | 403-298-4485 403-298-3317 | **Counsel for Calfrac** |
| Borden Ladner Gervais LLP 1900, 520 3rd Ave SW Calgary, AB T2P 0R3 **Patrick T. McCarthy, Q.C.** | pmccarthy@blg.com | 403-232-9441 | **Counsel for Debtor – Canada** |
| Borden Ladner Gervais LLP 1900, 520 3rd Ave SW Calgary, AB T2P 0R3 **Josef G.A. Krüger, Q.C.** | jkruger@blg.com | 403-232-9563 | **Counsel for Debtor – Canada** |
| Borden Ladner Gervais LLP 1900, 520 3rd Ave SW Calgary, AB T2P 0R3 **Robyn Gurofsky** | rgurofsky@blg.com | 403-232-9774 | **Counsel for Debtor – Canada** |
| Borden Ladner Gervais LLP 1900, 520 3rd Ave SW Calgary, AB T2P 0R3 **Matti Lemmens** | mlemmens@blg.com | 403-232-9511 | **Counsel for Debtor – Canada** |

| | | | |
|---|---|---|---|
| Borden Ladner Gervais LLP<br>1900, 520 3rd Ave SW<br>Calgary, AB T2P 0R3<br>**Jessica Duhn** | jduhn@blg.com | 403-232-9715 | **Counsel for Debtor –<br>Canada** |
| Borden Ladner Gervais LLP<br>1900, 520 3rd Ave SW<br>Calgary, AB T2P 0R3<br>**Dan Sears** | dsears@blg.com | 403-232-9529 | **Counsel for Debtor –<br>Canada** |
| Borden Ladner Gervais LLP<br>1900, 520 3rd Ave SW<br>Calgary, AB T2P 0R3<br>**Michael Perkins** | mperkins@blg.com | 403-232-9410 | **Counsel for Debtor –<br>Canada** |
| CIBC World Markets<br>9th Floor, Bankers Hall East<br>855-2 Street SW<br>Calgary, AB T2P 4J7<br>**Chris Folan** | Chris.folan@cibc.com | 403-260-0500 | **CIBC** |
| CIBC World Markets<br>161 Bay Street<br>Toronto, Ontario M5J 2S8<br>**Chris Hind** | Chris.Hind@cibc.ca | 416-594-7000 | **CIBC** |
| CIBC World Capital Markets<br>Inc.<br>161 Bay Street 6th Floor,<br>Toronto ON  M5J 2S8<br>**Ashwin Pamidi** | Ashwin.Pamidi@cibc.com | 416-594-8085 | **CIBC** |
| Court & Company,<br>Barristers and Solicitors<br>#112, 80 Chippewa Road<br>Sherwood Park, AB<br>T8A-4W6<br>**Dave Stults** | d.stults@courtandcompany.<br>com | 780-417-2333 | **Counsel for TBM<br>Group of Companies** |
| Cox Smith<br>112 E. Pecan Street, Suite<br>1800<br>San Antonio, Texas 78205<br>**Deborah Williamson** | dwilliamson@coxsmith.c<br>om | 210-554-575 | **Counsel for PNC** |

| | | | |
|---|---|---|---|
| Dickenson Wright LLP 500 Woodward Avenue Suite 4000 Detroit, Michigan 48226-3425 **John D. Leslie** | JLeslie@dickinson-wright.com | 416-646-3801 | **Counsel for PNC** |
| Dickenson Wright LLP 500 Woodward Avenue Suite 4000 Detroit, Michigan 48226-3425 **Lisa S. Corne** | LCorne@dickinson-wright.com | 416-646-4608 | **Counsel for PNC** |
| Dickenson Wright LLP 500 Woodward Avenue Suite 4000 Detroit, Michigan 48226-3425 **Allison R. Bach** | abach@dickinson-wright.com | 313-223-3604 | **Counsel for PNC** |
| Dickenson Wright LLP 500 Woodward Avenue Suite 4000 Detroit, Michigan 48226-3425 **Steven G. Howell** | showell@dickinson-wright.com | 313-223-3033 | **Counsel for PNC** |
| Dickenson Wright LLP 500 Woodward Avenue Suite 4000 Detroit, Michigan 48226-3425 **Theodore B. Sylwestrzak** | tsylwestrzak@dickinson-wright.com | 313-223-3036 | **Counsel for PNC** |
| Enquest Capital Corp. 310, Bow Valley Square IV 250 – 6th Ave SW Calgary, AB T2P 3H7 **Mark Williamson** | mwilliamson@enquest.ca | 403-537-5050 | |
| Ernst & Young Inc. 1000, 440 2nd Ave SW Calgary, AB T2P 5E9 **Neil Narfason** | Neil.narfason@ca.ey.com | 403-206-5067 | **Monitor Representatives** |
| Ernst & Young Inc. 1000, 440 2nd Ave SW Calgary, AB T2P 5E9 **Cassie Riglin** | Cassie.Riglin@ca.ey.com | 403-206-5116 | **Monitor Representatives** |

| | | | |
|---|---|---|---|
| Ernst & Young Inc.<br>1000, 440 2nd Ave SW<br>Calgary, AB T2P 5E9<br>**Nick Purich** | Nick.pb.purich@ca.ey.com | 403-206-5170 | **Monitor Representatives** |
| First Asset Investment Management Inc.<br>95 Wellington Ave West, Ste. 1400<br>Toronto ON M5J 2N7<br>**Lee Goldman**<br>**Craig Allardyce** | lgoldman@firstasset.com<br>callardyce@firstasset.com | 416-640-5566 | **Trustee and Investment Fund Manager to a number of Investment Funds** |
| Fulbright & Jaworski LLP<br>300 Convent Street, Suite 2100<br>San Antonio, TX 78205-3792<br>**Steve A. Peirce** | Steve.peirce@nortonrosefulbright.com | 210-270-7179 | **Counsel for the Monitor** |
| Fulbright & Jaworski LLP<br>2200 Rose Avenue, Suite 2800<br>Dallas, TX 75201-2784<br>**Louis R. Strubeck Jr.** | Louis.strubeck@nortonrosefulbright.com | 214-855-8040 | **Counsel for the Monitor** |
| Fulbright & Jaworski LLP<br>2200 Rose Avenue, Suite 2800<br>Dallas, TX 75201-2784<br>**Tim Springer** | Tim.springer@nortonrosefulbright.com | 214-855-8094 | **Counsel for the Monitor** |
| GasFrac Energy Services Inc.<br>1900, 801 – 6 Ave SW<br>Calgary, AB  T2P 3W2<br>**Lori McLeod-Hill** | Lori.mcleod-hill@gasfrac.com | 403-237-6077 | **Debtor CFO** |
| Langlois Kronstrom Desjardins LLP<br>1002 Sherbrooke Street W.<br>28th Floor<br>Montreal, Qubec H3A 3L6<br>**Gerry Apostolatos**<br>**Jessica Syms** | Gerry.apostolatos@lkd.ca<br>Jessica.syms@lkd.ca | 514-282-7831<br>514-282-7802 | **Egon Zehnder International Inc.** |
| MLT Lawyers<br>1600 Centennial Place<br> 520 3rd Avenue SW<br>Calgary AB T2P 0R3<br>**Dean Hutchison** | DHutchison@mlt.com | 403-693-4300 | **Counsel for CIBC World Markets Inc. (Financial Advisor)** |

| Miller Thomson LLP<br>5800, 40 King Street W.<br>Toronto, ON M5H 3S1<br>**Jeffrey Carhart** | jcarhart@millerthomson.com | 416-595-8615 | **Canadian Counsel for Preferred Pipeline LLC** |
|---|---|---|---|
| Miller Thomson LLP<br>3000, 700-9 Avenue SW<br>Calgary, AB T2P 3V4<br>**Nichole Taylor-Smith** | ntaylorsmith@millerthomson.com | 403-298-2401 | **Canadian Counsel for Preferred Pipeline LLC** |
| National Leasing Group Inc.<br>1525 Buffalo Place<br>Winnipeg, MB  R3T 1L9 | customerservice@nationalleasing.com | 204- 954-9000 | **Secured Party** |
| Norton Rose Fulbright LLP<br>3700, 400-3 Avenue SW<br>Calgary, AB T2P 4H2<br>**Howard A. Gorman** | Howard.gorman@nortonrosefulbright.com | 403-267-8144 | **Counsel for the Monitor** |
| Osler Hoskin LLP<br>TransCanada Tower<br> 450 - 1st St. S.W., Suite 2500<br>Calgary  Alberta  T2P 5H1<br>**A. Robert Anderson, Q.C.** | randerson@osler.com | 403-260-7004 | **Solicitor for PNC** |
| Osler Hoskin LLP<br>TransCanada Tower<br> 450 - 1st St. S.W., Suite 2500<br>Calgary  Alberta  T2P 5H1<br>**Lily Anne Wroblewski** | lwroblewski@osler.com | 403-260-7037 | **Solicitor for PNC** |
| PNC<br>**Mark Gittelman** | Mark.gittelman@pnc.com | | **PNC Business** |
| Pepper Hamilton LLP<br>3000 Two Logan Square<br>Philadelphia, PA 19103-2799<br>**Frances J. Lawall** | lawallf@pepperlaw.com | 215-981-4481 | **US Attorneys for Preferred Pipeline LLC** |
| Pepper Hamilton LLP<br>5100, 1313 N. Market Street<br>Wilmington, DE 19899-1709<br>**John H. Schanne, II** | schannej@pepperlaw.com | 302-777-6502 | **US Attorneys for Preferred Pipeline LLC** |

6

| | | | |
|---|---|---|---|
| Preferred Pipeline LLC<br>101, 100 Matsonford Road<br>Radnor, PA 19087<br>**Matthew Epps** | mepps@preferred.com | 484-684-1256 | **Preferred Pipeline LLC** |
| Vinson & Elkins LLP<br>Attorneys at Law<br>1001 Fannin Street, Suite 2500<br>Houston, TX 77002-6760<br>**Casey William Doherty, Jr.** | cdoherty@velaw.com | 713-758-3215 | **Attorneys for Debtor - US** |
| Vinson & Elkins LLP<br>Attorneys at Law<br>1001 Fannin Street, Suite 2500<br>Houston, TX 77002-6760<br>**Harry A. Perrin** | hperrin@velaw.com | 713-758-2548 | **Attorneys for Debtor - US** |
| Vinson & Elkins LLP<br>Attorneys at Law<br>1001 Fannin Street, Suite 2500<br>Houston, TX 77002-6760<br>**John E. West** | jwest@velaw.com | 713-758-4534 | **Attorneys for Debtor – US** |
| Vinson & Elkins LLP<br>Attorneys at Law<br>Trammell Crow Center<br>2001 Ross Avenue<br>Suite 3700<br>Dallas, TX 75201-2975<br>**L. Prentiss Cutshaw** | pcutshaw@velaw.com | 214-220-7826 | **Attorneys for Debtor-US** |
| **Garry M. Boris**<br>Barrister & Solicitor<br>202, 4921 – 49 Street<br>Red Deer, AB  T4N 1V2 | gborislaw@gmail.com | 403-340-2222 | **Counsel for Bedrock Capital Inc.** |
| Computershare<br>600, 530 – 8th Avenue S.W.<br>Calgary, Alberta T2P 3S8<br>**Anne DeWaele** | Anne.dewaele@computershare.com | 403-267-6387 | |
| Computershare<br>600, 530 – 8th Avenue S.W.<br>Calgary, Alberta T2P 3S8<br>**Kristine Calesso** | Kristine.calesso@computershare.com | 403-267-6372 | |

| | | | |
|---|---|---|---|
| Computershare<br>600, 530 – 8th Avenue S.W.<br>Calgary, Alberta T2P 3S8<br>**Nadia Mohamed** | Nadia.mohamed@computershare.com | 403-267-6509 | |
| Lewis, Roca, Rothgerber<br>1200 Seventeenth Street<br>Suite 3000<br>Denver, Colorado 80202<br>**Brent R. Cohen** | bcohen@rothgerber.com | 303-628-9521 | **Counsel for Calfrac** |
| Emkay Canada Leasing Corp.<br>212 Meridian Road NE<br>Calgary, AB  T2A 2N6 | | | **Secured Party** |
| Ford Credit Canada Leasing, A<br>Division of Canadian Road<br>Leasing Company<br>PO Box 2400<br>Edmonton, AB  T5J 5C7 | | | **Secured Party** |
| HSBC Bank Canada<br>407 8th Avenue SW<br>Calgary, AB  T2P 1E5 | | | **Secured Party** |
| Tricor And Finance Corp.<br>PO Box 397<br>Burlington, ON  L7R 3Y3 | | | **Secured Party** |
| Cam Clark Ford Sales<br>1001 Highland Park Blvd. NE<br>Airdrie, AB  T4A 0R2 | | | **Secured Party** |

## SCHEDULE "B"

Clerk's Stamp

| | |
|---|---|
| COURT FILE NUMBER | 1501-00396 |
| COURT | COURT OF QUEEN'S BENCH OF ALBERTA |
| JUDICIAL CENTRE | Calgary |
| APPLICANTS | IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, as amended |
| | AND IN THE MATTER OF THE *BUSINESS CORPORATIONS ACT*, R.S.A. 2000, c. B-9 |
| | AND IN THE MATTER OF GASFRAC ENERGY SERVICES INC., GASFRAC SERVICES GP INC., GASFRAC ENERGY SERVICES (US) INC., GASFRAC US HOLDINGS INC. and GASFRAC INC. |
| DOCUMENT | **MONITOR'S CERTIFICATE** |
| ADDRESS FOR SERVICE AND CONTACT INFORMATION OF PARTY FILING THIS DOCUMENT | Josef G.A. Krüger, Q.C./Robyn Gurofsky Borden Ladner Gervais LLP 1900, 520 3rd Ave. S.W. Calgary, AB  T2P 0R3 Telephone: (403) 232-9774 Facsimile: (403) 266-1395 Email: JKruger@blg.com /RGurofsky@blg.com File No. 441817-000015 |

1.  All defined terms used but not defined herein shall have the meanings ascribed thereto in the Sale Approval and Vesting Order granted in these proceedings on [ ], 2015 (the "**Order**").

2.  Pursuant to paragraph [ ] of the Order, Ernst & Young Inc., in its capacity as the Court-appointed Monitor (the "**Monitor**") of GASFRAC Energy Services Inc., GASFRAC Services GP Inc. for itself and in its capacity as general partner of GASFRAC Energy Services Limited Partnership, GASFRAC Energy Services (US) Inc., GASFRAC US Holdings Inc. and GASFRAC Inc. (collectively, the "**Vendor**"), delivers this certificate and hereby confirms that Closing of the sale of the Purchased Assets pursuant to the Asset Purchase and Sale Agreement between the Vendor and [ ] (the "**Purchaser**") dated February 27, 2015 (the "**Agreement**") has occurred and all purchase monies due and owing in respect of such sale

have been paid by the Purchaser to the Monitor for the Vendor, subject to the Final Statement of Adjustments and distributions from the Holdback.

**DATED** at the City of Calgary, in the Province of Alberta, this ___ day of [ ], 2015.

> **ERNST & YOUNG INC.** in its capacity as Court-appointed Monitor of GASFRAC Energy Services Inc., GASFRAC Services GP Inc. for itself and in its capacity as general partner of GASFRAC Energy Services Limited Partnership, GASFRAC Energy Services (US) Inc., GASFRAC US Holdings Inc. and GASFRAC Inc.

## SCHEDULE "C"

<u>Encumbrances</u>

Nil

## SCHEDULE "D"

### Permitted Encumbrances

LEGAL DESCRIPTION
PLAN 8722703
BLOCK 1
LOTS 6 AND 7
EXCEPTING THEREOUT ALL MINES AND MINERALS

Permitted Encumbrances:

| Registration Number | Date | Particulars |
|---|---|---|
| 752 055 566 | 20/05/1975 | UTILITY RIGHT OF WAY<br>GRANTEE - YELLOWHEAD GAS CO-OP LTD. |
| 802 274 979 | 17/11/1980 | UTILITY RIGHT OF WAY<br>GRANTEE - FORTISALBERTA INC.<br>320 - 17 AVENUE S.W.<br>CALGARY, ALBERTA T2S2Y1 |
| 852 056 382 | 21/03/1985 | UTILITY RIGHT OF WAY<br>GRANTEE - THE TOWN OF EDSON.<br>AFFECTED LAND: 8722703;1;7<br>"PART" |

## SCHEDULE "E"

### The Lands

| Municipal Address | Legal Description |
|---|---|
| 174-27th Street, Edson Alberta | PLAN 8722703, BLOCK 1, LOTS 6 and 7 EXCEPTING THEREOUT ALL MINES AND MINERALS |